UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| MARGARET S.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:19-cv-00444-MJD-JPH |
| | ) |
| ANDREW M. SAUL, | ) |
| | ) |
| Defendant. | ) |

**ENTRY ON JUDICIAL REVIEW**

Claimant Margaret S. requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). *See* 42 U.S.C. §423(d).

**I. Background**

On November 17, 2015, Claimant applied for DIB, alleging an onset of disability as of April 1, 2013.  [Dkt. 7-6 at 2.]  Claimant's application was initially denied on February 11, 2016, and then again upon reconsideration on May 9, 2016.  [Dkt. 7-3 at 12, 88-9.]  Administrative Law Judge Albert Velasquez ("ALJ") held a hearing on Claimant's application on May 22, 2018. [Dkt. 7-2 at 33.]  On August 27, 2018, the ALJ issued his determination that Claimant was not

---

[1] In an attempt to protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

1

disabled. *Id.* at 22. The Appeals Council then denied Claimant's request for review on July 18, 2019. *Id.* at 2. Claimant timely filed a Complaint with this Court on September 13, 2019, seeking judicial review of the Commissioner's decision. [Dkt. 1.]

## II. Legal Standards

To be eligible for DIB, a claimant must have a disability pursuant to 42 U.S.C. § 423. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a sequential, five-step analysis: (1) if the claimant is engaged in substantial gainful activity, she is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits her ability to perform basic work activities, she is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three, and is able to perform her past relevant work, she is not disabled; and (5) if the claimant is not found to be disabled at step three, cannot perform her past relevant work, but can perform certain other available work, she is not disabled. 20 C.F.R. § 404.1520. Before continuing to step four, the ALJ must assess the claimant's residual functional capacity ("RFC") by "incorporat[ing] all of the claimant's limitations supported by the medical record." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019).

Because the Appeals Council denied Claimant's request for review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Moreno v.*

*Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018). In reviewing a claimant's appeal, the Court reverses only "if the ALJ based the denial of benefits on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). Thus, an ALJ's decision "will be upheld if supported by substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019).

An ALJ need not address every piece of evidence but must provide a "logical bridge" between the evidence and his conclusions. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). This Court may not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Where substantial evidence supports the ALJ's disability determination, the Court must affirm the decision even if "reasonable minds could differ" on whether Claimant is disabled. *Id.*

### III. ALJ Decision

The ALJ first determined that Claimant had not engaged in substantial gainful activity since the alleged onset date of April 1, 2013. [Dkt. 7-2 at 14.] At step two, the ALJ found that Claimant had the following severe impairments: insulin dependent diabetes mellitus (with neuropathy), anxiety disorder, depressive disorder, bipolar disorder, and agoraphobia. *Id*. At step three, however, the ALJ found that Claimant "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments." *Id*. In making this determination, the ALJ considered Listings 9.00 (Endocrine disorders) and 11.14 (Peripheral neuropathy) with respect to Claimant's diabetes mellitus and Listings 12.04 (Depressive, bipolar and related disorders) and 12.06 (Anxiety and obsessive-compulsive disorders) with respect to Claimant's mental health. *Id*.

The ALJ then analyzed Claimant's RFC and concluded that she had the RFC to perform a range of light work in that she can:

> [Li]ft and carry twenty pounds occasionally, and ten pounds frequently, and stand and/or walk for six hours out of an eight hour workday, and sit for six hours out of an eight hour workday; except: she can no more than occasionally climb stairs or ramps. The claimant should avoid work at unprotected heights, working around dangerous moving machinery, or working around open flames or large bodies of water. She can maintain no more than occasional interaction with the public, coworkers, and/or supervisors. The claimant is able to understand, remember, and carry out simple instructions, but not complex instructions. She can sustain attention for two-hour segments of time. Further, the work should be such that it can be learned in thirty days or less, or by demonstration. The claimant is able to maintain attention and concentration skills sufficiently to function adequately in carrying out work-like tasks with reasonable pace and persistence, with normal work breaks over the course of an eight-hour workday, five days per week, on a continuous work schedule. Finally, the work should have no production-like quotas.

*Id.* at 16. In determining the RFC, the ALJ concluded that Claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id.* at 18.

At step four, the ALJ found that Claimant was unable to perform her past relevant work as a dietary manager. *Id.* at 20. The ALJ proceeded to step five, considering testimony from a vocational expert ("VE"), who indicated that an individual with Claimant's age, education, work experience, and RFC would be able to perform several jobs that exist in significant numbers in the national economy, such as a parts inspector, a night office cleaner, and a parking lot attendant. *Id.* at 21. Based on these findings, the ALJ concluded Claimant was not disabled. *Id.*

## IV. Discussion

The central issue in this case is whether substantial evidence supports the ALJ's determination that Claimant is not disabled. Claimant advances three arguments for reversing the ALJ's decision: (1) the ALJ impermissibly considered Claimant's activities of daily living as evidence of the ability to work full-time; (2) the ALJ failed to assess Claimant's unsuccessful work attempts in determining that Claimant can retain a job; and (3) the ALJ improperly "cherry-picked" the evidence to support his decision. These arguments are addressed, in turn, below.

### A. Activities of Daily Living

Claimant argues that the ALJ erroneously concluded in his SSR 16-3p assessment that Claimant's activities of daily living are consistent with the ability to perform light work. Claimant asserts that the ALJ improperly compared her ability to perform basic activities of daily living with her ability to maintain full time employment. The Court agrees.

The ALJ's credibility assessment generally warrants "special deference because the ALJ is in the best position to see and hear the witness and determine credibility." *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000). A court, however, has "greater freedom to review credibility determinations based on objective factors . . . rather than subjective considerations." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 354 (7th Cir. 2005). In determining whether an individual is disabled, an ALJ must consider all of the individual's symptoms, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the record. S.S.R. 16-3p. Once an underlying impairment that could reasonably be expected to produce an individual's symptoms is established, an ALJ must evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities. *Id.* Among the factors

5

an ALJ may consider in evaluating the credibility of an individual's symptoms are daily activities, nature of pain, and the use of medications or other treatments. *See* 20 C.F.R. § 404.1529(C)(3). The ALJ may not disregard a claimant's testimony about the persisting and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms a claimant alleges. S.S.R. 16-3p. Instead, the ALJ must resolve any "discrepancies between the objective evidence and self-reports." *Jones v. Astrue*, 623 F.3d 1155, 1161 (7th Cir. 2010). The critical inquiry is whether the ALJ's credibility determination is "reasoned and supported," and it may be overturned only if it is "patently wrong." *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008). A credibility determination is patently wrong if it "lacks any explanation or support." *Id.*

Claimant argues that in assessing her abilities, the ALJ impermissibly analogized her activities of daily living with the ability to perform a full-time job. The ALJ found that "[C]laimant's statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not entirely consistent with the medical evidence[.]" [Dkt. 7-2 at 18.] The following is the only explanation given by ALJ for his rejection of Claimant's statements:

> In regards to the claimant's daily activities, the evidence as a whole demonstrates her limitations are less severe than she alleges. The claimant also reported that she goes outside twice a day, that she drives a car, and that she shops independently in stores. The claimant reported that she experiences no problems with personal care. Additionally, the claimant reported that she prepares her own meals twice a day. The claimant also reported that she completes household tasks such as cleaning and washing laundry. Additionally, the claimant reported that she lives alone in an apartment. Moreover, the claimant reported that she feeds, waters, walks, and takes her dog to the veterinarian if needed. The claimant reported that she is able to pay bills, count change, handle a savings account, and use a checkbook or money orders. Accordingly, I find the claimant's daily activities are consistent with the ability to perform work according to the aforementioned modest residual functional capacity.

6

...

*Id.* In her December 2015 Function Report, Claimant reported that her conditions impact her "talking, completing tasks, concentration, understanding, following instructions, and getting along with others." [Dkt. 7-7 at 37.] The ALJ failed to mention that Claimant described she cannot finish what she starts and she follows spoken instructions "not so good." *Id.* The Function Report also revealed that Claimant responded to both the question "how well do you handle stress?" and "how well do you handle changes in routine?" with "not well." *Id.* at 38. The ALJ also failed to resolve the inconsistencies between his conclusion and Claimant's testimony on her inability to work due to her severe panic attacks, anxiety working around other people, and manic episodes. [Dkt. 7-2 at 40, 41, 45, 46.] Therefore, the ALJ erroneously ignored the aspects of Claimant's statements on her daily activities that did not support his conclusion.

Claimant also contends the ALJ noted some daily activities that are contradicted by the testimony of Claimant's sister. The following is the ALJ's only mention of Claimant's sister's testimony, and Third-Party Function Report: "[T]he claimant's sister reported that the claimant spends time reading, an activity that requires concentration. The claimant's sister also reported that the claimant usually prepares her own complete meals." [Dkt. 7-2 at 15.] Despite Claimant's own report about her ability to manage her finances, in the December 2015 Third-Party Function Report, Claimant's sister reported that Claimant is unable to pay bills, handle a savings account, or use a checkbook and that Claimant "cannot handle money at all." [Dkt. 7-7 at 44-45.] To the question of whether Claimant has been "laid off from a job because of problems getting along with other people," Claimant's sister answered, "Too many times to count." *Id.* at 47. And, to the question of "How well does the disabled person handle stress?", Claimant's sister responded, "NOT WELL AT ALL! Sometimes vomits and loses bowel control.

7

Shakes uncontrollably." *Id.* Claimant's sister also noted that Claimant's "concentration, ability to complete tasks and follow instructions varies widely depending on the state she is in (manic/normal/depressed)." *Id.* at 48. Further, Claimant's sister testified at the hearing that Claimant had stopped bathing and attending to her personal hygiene, that Claimant's apartment is filthy, and that during manic episodes she makes dangerous and spontaneous decisions. [Dkt. 7-2 at 50-52.] These accounts of activities of daily life are incompatible with the ability to retain substantial gainful employment and the ALJ should have provided an explanation on how these "daily activities are consistent with the ability to perform work." *Id.* at 18.

Further, to support his conclusion on Claimant's ability to concentrate, the ALJ relied on Claimant's sister's statement, but he failed to mention that Claimant's sister actually reported Claimant's "concentration and ability to focus are much less" so Claimant spends "much less time . . . reading[.]" [Dkt. 7-7 at 45.] Regarding Claimant's dog, Claimant's sister reported that Claimant "[d]epends on her dog for comfort/acceptance. Is unusually close to the dog. I don't think she could function at all without her dog." *Id.* These statements reinforce the fact that basic daily activities are not indicative of the ability to perform full-time work. *See Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (concluding that ALJs must recognize the critical differences between activities of daily living and activities in a full-time job, e.g., that a person has more flexibility in scheduling the former than the latter, can get help from other persons, and is not held to a minimum standard of performance, as she would be by an employer).

The ALJ failed to address the conflicting record evidence regarding the limitations of Claimant's daily activities in his conclusion regarding the credibility of Claimant's subjective symptoms. This failure should be remedied on remand.

B. Unsuccessful Work Attempts

Claimant asserts the ALJ failed to properly account for her unsuccessful work attempts in determining she is capable of working full time. In response, the Commissioner contends that the ALJ did discuss Claimant's past work at step one and that the ALJ is not required to discuss Claimant's work history in evaluating her subjective symptoms, as "work history is just one factor among many, and it is not dispositive." [Dkt. 10 at 13.] In reply, Claimant acknowledges that the ALJ recognized her difficulties in maintaining employment when evaluating her subjective symptoms, but argues that the ALJ failed to explain how Claimant's failed work attempts were considered in concluding she is able to maintain full time employment.

The Seventh Circuit has concluded that work that a claimant is forced to stop after a short time due to her impairment is an unsuccessful work attempt and that the earnings from such attempts shall not be considered as evidence that the claimant can engage in substantial gainful activity. *Stevenson v. Chater*, 105 F.3d 1151, 1155 (7th Cir. 1997); 20 C.F.R. § 404.1574(a)(1)). Additionally, where it is established that "the claimant can hold a job for only a short period of time, the claimant is not capable of substantial gainful activity." *Kangail v. Barnhart*, 454 F.3d 627, 629 (7th Cir. 2006). Moreover, the Seventh Circuit has previously explained, "a claimant's *desire* to work is not inconsistent with her *inability* to work because of a disability." *See Voigt v. Colvin,* 781 F.3d 871, 876 (7th Cir.2015) (claimant's desire to work, but inability to find work, is "consistent with his wanting to lead a normal life yet being unable to land a job because he's disabled from gainful employment"). Although a claimant may want to work, may seek work, and in some cases may land work, multiple unsuccessful work attempts showcase the inability to engage in full-time work for a significant period of time. *See Hill v.*

*Colvin*, 807 F.3d 862, 868 (7th Cir. 2015). Here, the ALJ recognized Claimant's failed work attempts by stating:

> [T]he claimant alleged that she stopped working because "I have had many jobs in the past 2 years but am unable to focus on work and I have panic attacks frequently . . . [t]he longest I can hold a job now is about a week . . . I am looking for work constantly but cannot find anything that I can do consistently . . . [a]lso, the job market in this area is very depressed." At the hearing, the claimant testified that she attempted to work in two different manufacturing jobs making automobile parts, but was unable to continue working because the line "was going too fast for her", and that she experienced a "panic attack."

[Dkt. 7-2 at 17-18.] The ALJ went on to reject Claimant's testimony about the severity of her symptoms by concluding that "claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence[.]" *Id.* at 18. To support his decision, the ALJ pointed to the adult needs and strengths assessment performed by the Hamilton Center on October 2, 2015, where Claimant reported that she "will start a job on Monday." *Id.* at 19.

However, the ALJ failed to mention that the same appointment note stated that Claimant "is unable to keep [a] job due to her mood swings." [Dkt. 7-9 at 22.] A treatment note from an appointment with Dr. Patel stated that Claimant "is currently jobless." *Id.* at 26. In January 2017, Dr. Shilpa Guggali, a psychiatrist, discussed that Claimant "got new permanent job and she is happy about it," but in the next appointment in February 2017, Dr. Guggali reported that Claimant "lost her job last Friday" and is experiencing "ongoing psychiatry issues." [Dkt. 7-10 at 65, 70, 73.] In March 2017, Dr. Guggali stated that Claimant "recently lost her job [due to] calling in to [sic] much." *Id.* at 58. In April 2017, Dr. Guggali reported Claimant "tried to start work at a new job and had a panic attack and could not go back." *Id.* at 51. While an ALJ is not statutorily required to consider a claimant's work history, in assessing Claimant's credibility about the disabling effects of her impairments, the ALJ should have acknowledged Claimant's

10

efforts to find work while experiencing panic attacks, extreme mood swings, and undergoing treatment to relieve it, and her inability to maintain employment due to her symptoms. See Pierce v. Colvin, 739 F.3d 1046, 1051 (7th Cir. 2014) (criticizing ALJ for failing to consider claimant's "dogged efforts" to work in deciding claimant's credibility); Hill v. Colvin, 807 F.3d 862, 868 (7th Cir. 2015); Stark v. Colvin, 813 F.3d 684, 689 (7th Cir. 2016).

### C. The ALJ Cherry-Picked the Evidence

Lastly, Claimant argues the ALJ cherry-picked evidence from the record while ignoring contradictory evidence supportive of a claim of disability. Specifically, Claimant contends at step four in his SSR 16-3p assessment, the ALJ impermissibly cited to only four appointment records of over more than three years of mental health treatment to support his conclusion that Claimant is capable of light work. Thus, Claimant asserts the ALJ failed to look at the evidence as a whole, which she claims shows that she is "an individual who has severe and frequently fluctuating symptoms with brief periods of stability." [Dkt. 9 at 17.] In response, the Commissioner argues there is no doctor's opinion in the record that is more disabling than the limitations assessed by the ALJ, so the ALJ's decision should not be disrupted. The Court disagrees.

The Court has repeatedly held that although an ALJ does not need to discuss every piece of evidence in the record, the ALJ may not analyze only the evidence supporting his ultimate conclusion while ignoring the evidence that undermines it. Moore v. Colvin, 743 F.3d 1118, 1123 (7th Cir. 2014). This Circuit has repeatedly stated that, "a person who suffers from mental illness will have better days and worse days, so a snapshot of a single moment says little about her overall condition." Punzio v. Astrue, 630 F.3d 704, 710 (7th Cir. 2011). Thus, an ALJ

cannot "cherry-pick facts supporting a finding of non-disability while ignoring evidence that points to a disability finding." *Reinaas v. Saul*, 953 F.3d 461, 466 (7th Cir. 2020).

Claimant argues that the ALJ has a duty to address her mental limitations when she was depressed, anxious, or agitated and explain why these instances were less reliable indicators of her condition than those he chose to cite. Treatment notes indicating Claimant appeared "stable" must be considered as a "snapshot of a single moment," and not as a display of Claimant's overall impairments. Moreover, records up until 2018 consistently indicate Claimant experienced severe mental impairments—including anxiety, depression, and mood swings—that inhibit her functioning. Treatment records from October 2015 to January 2018 indicate that Claimant experienced frequent panic attacks and fluctuating symptoms ranging from depressed states to manic episodes. [*See* Dkt. 7-9 at 24, 27, 29, 30, 35; Dkt. 7-10 at 28-29, 34, 39, 44, 51, 65, 82, 85; Dkt. 7-11 at 40.] Because the ALJ failed to discuss the above record evidence and only pointed to the notes from four appointments to support his findings, he failed to consider the totality of the evidence; thus, this should be remedied on remand.

## V. Conclusion

For the reasons stated above, the Commissioner's decision is **REVERSED** and **REMANDED** for further proceedings.

SO ORDERED.

Dated: 17 JUL 2020

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on all
ECF-registered counsel of record via email
generated by the Court's ECF system.